**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 07-604** |
| | : | |
| **JOHN HERRON** | : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                                                                          **November 18, 2010**

Contending that there was insufficient evidence to support the jury's finding that he intended to manufacture at least 500 grams of methamphetamine, defendant, John Herron, has moved for judgment of acquittal. Specifically, he maintains that no reasonable jury could find that he could have manufactured 500 grams or more of methamphetamine from the amount of the precursor chemical he was using. In short, he argues that the evidence was insufficient to sustain a conviction for violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and he is entitled to a judgment of acquittal on the count charging that offense.

The government counters that the testimony of a chemist establishes otherwise. According to the government's expert, Ephedrine produces a nearly 1:1 yield ratio to methamphetamine. Thus, the government argues that because its undercover informant provided Herron with what was supposed to be one kilogram of substitute Ephedrine, a rational trier of fact could conclude that he intended to produce as much as 900 grams of methamphetamine.

Herron agrees that pure Ephedrine can produce an almost 1:1 yield ratio to methamphetamine. But, he contends, the government failed to provide any evidence, direct or indirect, that he believed the substitute chemical was pure Ephedrine. According to Herron, the evidence establishes that he believed he was receiving crushed Sudafed

pills which, according to Patrick's testimony, contain only three percent Ephedrine. Because one kilogram of Sudafed contains under 50 grams of Ephedrine, Herron could not have expected to produce more than 50 grams of methamphetamine.

At trial, the government presented the testimony of Peter Sarris, the police officer who directed the confidential informant and gave him the fake precursor chemical necessary to produce the methamphetamine; Anthony Marzullo, the informant whose conversations with Herron regarding their plan to manufacture methamphetamine were recorded; and, Rebecca Patrick and Diana Sanchez, two forensic chemists who explained how methamphetamine is made and what ingredients are necessary. The Marzullo-Herron conversations were played for the jury.

The government's plan was to dupe Herron into thinking that he was receiving enough Ephedrine to produce almost one kilogram of methamphetamine. Implementation of the plan fell short of the government's expectations. Instead of making it clear that he was supplying Herron with Ephedrine, Marzullo referred to the precursor as Sudafed. The difference between these two chemicals is critical because each produces substantially different amounts of methamphetamine.

Following a two day trial, the jury found Herron not guilty of knowing and intentional possession of a List I chemical, methylamine, with intent to manufacture methamphetamine[1]; and guilty of attempt to manufacture methamphetamine.[2] As part of its verdict, the jury responded affirmatively to a special interrogatory asking whether the government had proven beyond a reasonable doubt that the amount that the defendant

---

[1] 21 U.S.C. § 841(c)(1).

[2] 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A).

attempted to manufacture was 500 grams or more.

After viewing the evidence in the light most favorable to the government, we conclude that there was insufficient evidence from which the jury could have concluded beyond a reasonable doubt that Herron intended to manufacture 500 grams or more of methamphetamine. However, there was sufficient evidence to support a conviction for the lesser included offense of attempt to manufacture an unspecified quantity of a controlled substance, methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Therefore, we shall grant the motion to the extent it requests a judgment of acquittal on the aggravating weight element and deny it to the extent it seeks outright acquittal.

**Standard of Review**

Under Fed. R. Crim. P. 29, the Court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The standard is whether there is sufficient evidence in the record, viewed in the light most favorable to the prosecution, from which a "rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006) (citing *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995)). Only "where the prosecution's failure is clear" can a court grant a motion for acquittal. *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). In viewing the evidence in the context of Rule 29, we may not weigh the credibility of witnesses and the evidence. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

**Discussion**

Because the quantity of the controlled substance at issue under § 841 determines

the potential sentencing range according to a schedule of escalating penalties, it must be proven beyond a reasonable doubt as if it were a statutory element of the offense. *See United States v. Lacy*, 446 F.3d 448, 453 (3d Cir. 2006) ("[D]rug quantity . . . must be treated as [an] element of a section 841 possession with intent to distribute offense."). Thus, the government had to prove beyond a reasonable doubt the quantity of methamphetamine Herron intended to make. *United States v. Barbosa*, 271 F.3d 438, 452-53 (3d Cir. 2001).

The issue here is whether the government presented sufficient evidence from which the jury could have concluded that Herron had the requisite intent to produce 500 grams or more of methamphetamine. The government's argument that it did rests on the testimony of Sarris that he provided Marzullo one kilogram of fake Ephedrine; the testimony of Patrick that one kilogram of Ephedrine will yield 500 to 900 grams of methamphetamine; and excerpts of recorded conversations between Herron and Marzullo discussing their plan to make methamphetamine from the ingredients Marzullo was providing. On the basis of this evidence, the government contends that it proved that Herron intended to produce at least 500 grams of methamphetamine from the substitute precursor chemical he received from Marzullo. This contention is based on the premise that Herron believed he was receiving Ephedrine, rather than Sudafed, from Marzullo. Thus, the critical question is whether there was sufficient evidence from which the jury could have concluded that Herron understood he was getting one kilogram of Ephedrine.

Herron contends that the record is devoid of any evidence that he believed the substitute chemical was pure Ephedrine. He argues, to the contrary, that it showed he believed Marzullo gave him crushed Sudafed pills. Relying on Patrick's testimony, he

4

contends that he could not have produced 500 grams or more of methamphetamine from the Sudafed. Herron points to the chemist's testimony where she explained that a 1:1 yield ratio assumes using pure Ephedrine. According to Patrick, where the Ephedrine is extracted from Sudafed, the yield ratio drops to .03 kilograms (30 grams) of methamphetamine from one kilogram of Sudafed. Therefore, according to Herron, the government failed to prove an essential element of the offense, that is, he knowingly or intentionally attempted to manufacture 500 grams or more of methamphetamine.

The only evidence regarding what Herron believed he was using - pure Ephedrine or Sudafed - as a precursor to manufacturing methamphetamine comes from the conversations recorded between Marzullo and Herron. These conversations are summarized, in relevant part, as follows:

> CW (Marzullo): He's gonna get the pills.
> HERRON: When?
> CW: Probably Monday.
>
> . . .
>
> HERRON: What's the inactives? You know . . . you don't know?
> CW: Supposed to be just the two inactive ingredients.
> HERRON: Just the two?
> CW: It's the hydrochloride . . . it's the ephedrine.
> HERRON: REDACTED
> CW: Huh?
> HERRON: REDACTED
> CW: Well, these are supposed to be the Sudafed pills that we need.
> HERRON: The white ones huh?
> CW: Yeah.
> HERRON: They got provadone in it?
> CW: No . . . Just the two . . .
> HERRON: Just the two?
> CW: Yeah, just the two inactive ingredients.

> . . .
>
> HERRON: I mean, they're right, right?
> CW: Huh?
> HERRON: If they're right, then there's no problem.
> CW: Yeah, they are. Whoever it is that's givin' them to him knows what we need. He knows what we need. Whatever the price . . . not that that matters with us but . . .
> HERRON: Look em up in the pill book.
> CW: Whatever the price is . . . I mean . . . whatever the price is . . . he knows what we need. This guy knows.
> HERRON: Well, we'll go with the pill book anyway, I mean . . .
> CW: What pill book? You mean the PDR?
> HERRON: Yeah.
> CW: They've got non-prescription . . . drug . . . uh . . . thing pills.
> HERRON: They're not non-prescription are they?
> CW: Huh?
> HERRON: They're not non-prescription . . . 15 milligrams?
> CW: Naw . . . I mean sayin . . . when you . . . regular Sudafed, that's not in the PDR right?
> HERRON: Yeah but it's prescription . . . they don't make 15 milligrams ones. They're all 30 and 25. That's a prescription drug.
> CW: I didn't know that.
> HERRON: They prescribe them too.
> CW: I didn't know that. I thought they were just over the counter pills.
> HERRON: Oh, I've never seen them 15 milligrams, have you?
> CW: Is that what they were?
> HERRON: Yeah, 15s. That's what I mean, its an odd size.
> CW: Yeah, but regular Sudafed, you don't need a prescription for.
>
> . . .
>
> HERRON: If the pills are alright . . . we're good.
> CW: Yeah.
> HERRON: I mean, that's all it is . . . ya know?
> HERRON: We just gotta know that before . . . (UI) the book . . . I'll try to look em up . . . I got a book.

*Trial Tr.* (April 19, 2010) at 14.

HERRON: Well . . . Are they just the two inactives?
CW: Supposedly yeah.  Supposedly yeah . . . yeah.
HERRON: We'll see what we can do . . . (UI) . . . We'll see what we can do alright?
CW: Alright.

      . . .

CW: Alright . . . Alright so what we're gonna . . . so . . . We're gonna put the pills in water.
HERRON: Well, we'll try to . . . we'll put a couple of em in there.
CW: Huh?
HERRON: We're gonna put a couple . . . See what they look like.
CW: (UI).
HERRON: REDACTED
CW: What pills are they?
HERRON: REDACTED
CW: Oh, you mean regular Sudafed?
HERRON: Yeah.
CW: See, I've never put regular Sudafed in water.
HERRON: REDACTED
CW: REDACTED
HERRON: REDACTED
CW: Alright . . . Alright, cause he . . . he . . . Whoever they got . . . he's getting them from, swears that these are the ones.
HERRON: Alright.
CW: That, ya know, there's . . . they're the ones that we normally use.
HERRON: Alright.  Alright.
CW: I don't know what his background is but . . . I mean, he does have a background like ours.
HERRON: Right, he said there's the two inactives right?

      . . .

HERRON: There's a lot of pills in here.
CW: There better be.
HERRON: Smashed up?  (UI).
CW: He put em in the fuckin' blender.

*Id.* at 22.

HERRON: . . . They got so much crap in them pills man . . . ya

7

> know?
> CW: Well these are supposed to be the ones we want. These are supposed to be the ones we need.

*Id.* at 28.

Nothing in these conversations reveals, directly or indirectly, that Herron believed he was using one kilogram of pure Ephedrine as the precursor chemical to manufacture methamphetamine. On the contrary, they show that he believed the ingredient Marzullo was providing was Sudafed from which he and Marzullo would then extract pure Ephedrine to manufacture methamphetamine. In that case, according to Patrick's calculations, he could not have made more than 30 grams. Thus, because the government failed to prove that Herron knew he was receiving enough of the ingredient to manufacture one kilogram of methamphetamine, it failed to prove he intended to manufacture more than 500 grams of the substance.

Herron argues that the appropriate remedy for the government's failure of proof is outright acquittal. He claims that because the jury never received an instruction to consider a lesser included offense of the aggravated §§ 841(a)(1) and (b)(1)(A) charge, we lack the authority to enter judgment on the lesser included offense.[3]

The government argues that even if there was inadequate evidence regarding the quantity element, the appropriate remedy is the entry of judgment on the lesser included offense, attempt to manufacture an unspecified quantity of methamphetamine. The government contends that the instructions given to the jury adequately expressed that quantity was an aggravating factor to the lesser included charge of attempt to

---

[3] Herron neither requested a jury instruction covering the lesser included offense nor objected to the charge given. Nevertheless, we shall consider his contentions.

manufacture any quantity of methamphetamine. Thus, it argues that in the event we find that it failed to sufficiently prove the charged quantity, we may enter judgment on the lesser included offense.

Judgment on a lesser included offense may be entered when there is insufficient evidence to support a jury's guilty verdict on the greater offense even though the jury was not instructed to consider the lesser offense. *United States v. Petersen*, ___ F.3d ___, 2010 WL 3817087, at *9 (3d Cir. Oct. 1, 2010); *see also Gov't of the V.I. v. Josiah*, 641 F.2d 1103, 1108 (3d Cir. 1981) ("A trial court . . . has authority to enter a judgment of conviction on a lesser-included offense when it finds that an element exclusive to the greater offense is not supported by evidence sufficient to sustain the jury's finding of guilt on the greater offense."). A court may enter judgment on an uncharged lesser included offense where the evidence, viewed in the light most favorable to the government, fails to establish all of the elements of the offense charged but does establish the elements of the lesser included offense, and the defendant will not suffer any undue prejudice. *Petersen*, 2010 WL 3817087, at *8 (quoting *Allison v. United States*, 409 F.2d 445, 451 (D.C. Cir. 1969)). "'A lesser included offense is one that does not require proof of any additional element beyond those required by the greater offense.'" *United States v. Scott*, 243 F. Supp. 2d 97, 104 (D. Del. 2003) (quoting *Gov't of V.I. v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982)) (emphasis omitted).

In *Petersen*, the Third Circuit affirmed the district court's entry of judgment against the defendant for the lesser offense of possession of 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) after the jury acquitted him on the charged greater offense, possession of 500 grams or more of cocaine with intent to

distribute within 1000 feet of a public school in violation of § 860(a). *Petersen*, 2010 WL 3817087, at *8-9. Although the indictment charged only possession with intent to distribute within 1000 feet of a school in violation of § 860(a), the district court entered judgment against the defendant on an uncharged lesser included offense, possession with intent to distribute in violation of § 841(a), even though the jury had not been instructed on this offense. *Petersen*, 2010 WL 3817087, at *4.

As the *Petersen* court observed, courts are split on whether judgment can be entered on a lesser included offense absent a jury instruction on the lesser included offense. Some hold that it cannot while others do not require a separate jury instruction on the lesser included offense before judgment can be entered. *Petersen,* 2010 WL 3817087, at *7-8 (comparing, for example, *United States v. Dhinsa*, 243 F.3d 635, 676-77 (2d Cir. 2001) (vacating conviction on lesser included offense because district court did not give lesser included offense instruction) with *United States v. Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (directing district court to enter judgment on lesser included offense despite jury not receiving instruction on lesser included offense)).

Rather than focusing on whether a lesser included offense instruction was given, the Third Circuit, as announced in *Petersen*, analyzes the nature of the offenses involved and the prejudice to the defendant. *Petersen,* 2010 WL 3817087, at *8. First, the evidence must be sufficient to establish beyond a reasonable doubt all of the elements of the lesser included offense. Second, the defendant must not have been prejudiced by the failure to give a lesser included offense charge. *Petersen,* 2010 WL 3817087, at *8 (citing *Allison*, 409 F.2d at 451). If these two conditions are met, judgment may be entered on the uncharged lesser included offense.

Herron was charged under 21 U.S.C. § 846 with knowingly and intentionally attempting to manufacture 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of §§ 841(a)(1) and (b)(1)(A).  To establish this offense, the government was required to prove that Herron: (1) intended to manufacture methamphetamine, a controlled substance, in violation of § 841(a)(1); (2) intended to manufacture methamphetamine in an amount equal to or greater than 500 grams as specified in § 841(b)(1)(A); and (3) performed an act constituting a "substantial step" toward the commission of that offense.  *See United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (defining criminal attempt); *Lacy*, 446 F.3d at 454 (parsing possession of controlled substance charge under § 841(a)(1)).

Here, the jury found Herron guilty of attempt to manufacture 500 grams or more of methamphetamine in violation of §§ 841(a)(1) and (b)(1)(A).  The weight was charged to trigger § 841(b)(1)(A)'s penalty range for violations of the substantive offense of § 841(a)(1), which defines the proscribed conduct.  Nevertheless, a defendant may be convicted of an offense involving a smaller quantity of drugs than that charged in the indictment as a lesser included offense of the charged offense.  *United States v. Shaheed*, 183 F. App'x 168, 174 (3d Cir. 2006) (citing *United States v. Vazquez*, 271 F.3d 93, 105 (3d Cir. 2001)).  Because a violation of §§ 841(a)(1) and (b)(1)(C), the manufacturing of an unspecified quantity of a Schedule I or II controlled substance, requires proving the same elements, except the weight, as the elements of the charged offense, it is a lesser-included offense of §§ 841(a)(1) and (b)(1)(A).  *See United States v. Prince*, 330 F. App'x 380, 383 (3d Cir. 2009); *United States v. Johnson*, 206 F. App'x 158, 161 (3d Cir. 2006); *Scott*, 243 F. Supp. 2d at 104.

The evidence here was insufficient to prove that Herron intended to produce 500 grams or more of methamphetamine. But, it was sufficient to support the jury's conclusion that Herron knowingly and intentionally attempted to manufacture some amount of methamphetamine. There is no question that a §§ 841(a)(1), (b)(1)(C) offense is a lesser included offense of §§ 841(a)(1), (b)(1)(A). All of the elements of the former are elements of the latter. There was ample evidence to permit a jury to conclude that Herron had committed the lesser included offense. Thus, we now consider the prejudice prong.

Initially, we do not see how Herron can complain that no lesser included offense instruction was given. The jury instructions as a whole clearly instructed the jury that it could only find Herron guilty of the greater offense, § 841(b)(1)(A), if it first found the government had proven beyond a reasonable doubt all of the elements of the lesser offense, § 841(b)(1)(C).

As in *Petersen*, Herron's jury was instructed to consider the charged offense element-by-element, requiring it to consider the elements of the lesser included offense before turning to the aggravating factor of § 841(b)(1)(A), the weight of the intended product. It could consider the weight factor only if it found Herron guilty of attempt to manufacture some quantity of methamphetamine.

The jury was instructed as follows:

> To prove the crime charged in the second count of the indictment, that is the crime of attempted manufacture of a mixture or substance containing methamphetamine, a controlled substance, the government must prove beyond a reasonable doubt three essential elements:
>
> One, the defendant, John Herron, intended to manufacture methamphetamine, a controlled substance; two, he took a substantial step towards manufacturing methamphetamine

> and, three, he did so knowingly and intentionally.

Trial Tr. (April 19, 2010) at 129.

> In addition, the government must also prove beyond a reasonable doubt that . . . the weight of the controlled substance methamphetamine was 500 grams or more.

Id. at 131-32.

> If, and only if, you find the defendant guilty of count two, that is attempt to manufacture methamphetamine, you must answer a question regarding certain quantities of the controlled substance charged in count two.

Id. at 134.

> Again, you only reach the issue of the amount and weight if you find beyond a reasonable doubt John Herron guilty of attempting to manufacture methamphetamine.

Id. at 135.

The jury was presented with a general verdict form as well as special interrogatories addressing the quantity of methamphetamine Herron was alleged to have attempted to manufacture. After finding him guilty of attempt to manufacture methamphetamine, the jury then answered the special interrogatory addressing the aggravated weight element of the § 841 charge. As in *Petersen*, the special interrogatory eliminated the risk that the jury could have found Herron guilty of the charged offense even though the government had only proven the elements of the lesser included offense. The jury was required to find the existence of the elements of the offense of attempt to manufacture methamphetamine before considering whether the government had proven the aggravating factor of weight.

In addition, Herron's indictment specifically identified the lesser included offense, § 841(a)(1). Herron's indictment read:

> John Herron knowingly and intentionally attempted to manufacture 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. In violation of Title 21, United States Code, Sections 846, 841(a)(1), (b)(1)(A).

Like the school proximity offense in *Petersen*, § 841(b)(1)(A) is a penalty provision applied to the substantive offense in § 841(a)(1), the lesser included offense. Similarly, § 841(b)(1)(C) does not provide its own substantive offense. It is a penalty provision for a violation of § 841(a)(1) where the quantity of the Schedule I or II controlled substance is unspecified. *See Prince*, 330 F. App'x at 382-83 (dividing offense between "substantive conduct charged under § 841(a)(1)," and "[s]ection (b)(1)(C)-the penalty subsection"). Thus, because Herron's indictment included a violation of § 841(a)(1) and because the charged offense subsumes the penalty provision § 841(b)(1)(C), Herron was on sufficient notice that he had to defend against a charge of attempt to manufacture any quantity of methamphetamine. Consequently, Herron was not unduly prejudiced in his ability to defend. Thus, judgment will be entered on § 841(a)(1), the lesser included offense.